# GIBBS, Appellant, v. WHITWELL et al.

### Division One, June 29, 1901.

1. **Specific Performance:** LANDS: PROOF REQUIRED. A verbal contract for the sale of lands must be established by clear, definite and unequivocal proof. If the terms are uncertain or ambiguous, or not made out by satisfactory proof, specific performance will not be decreed.

2. ———: ACTS OF PERFORMANCE. Acts which are referable to something else than the verbal agreement to convey land, and which may ordinarily be otherwise accounted for, do not constitute performance of the agreement.

3. ———: ———: RENTS, CULTIVATION, ETC. The plaintiff claims that her father put her and her husband in possession of 165 acres of land under a verbal agreement to the effect that if she would move upon and make a home of the land he would convey it to her. They did move on the land, occupied one of the houses thereon for about eight years and cultivated about 40 acres thereof, without paying any rent therefor or any taxes thereon, the taxes being paid by her father, in whom was the title, the deed at the time of the purchase naming him as grantee, although it was his wife's separate money that bought it. During that time they repaired the fences, improved the house, set out a few fruit trees and cleared brush off of the land, the whole improvements being worth about $100. A few months before her father died he conveyed it to a trustee, and he conveyed it to plaintiff's mother, and plaintiff and her husband continued to occupy the house and forty acres and paid her mother rent therefor, and she paid the taxes, and for ten or twelve years the rest of the land was rented to other persons, who occupied the log house thereon, and the rent was paid to the mother. *Held,* that these facts do not authorize the inference that the possession was under a promise by her father that the land was to be given to her. Such possession was equally as consistent with a mere license to occupy and cultivate as with a promise to convey. And the oral evidence showing no actual agreement to convey, it is held that there is nothing on which to base a decree for specific performance.

Appeal from Cape Girardeau Court of Common Pleas.—*Hon. F. E. Burrough,* Judge.

AFFIRMED.

*J. R. Young* for appellant.

(1)   Oral gift accompanied by possession of donee and improvements of the premises will create color of title and donee will hold against donor and will also hold against the assignees and legal representatives of donor.   The donee is in the position of a purchaser for valuable consideration, and the court will decree title in donee.   Rannels v. Rannels, 52 Mo. 112; Cooper v. Ord, 60 Mo. 431; White v. Ingram, 110 Mo. 482; Allen v. Mansfield, 108 Mo. 349; Hubbard v. Hubbard, 140 Mo. 303.   Even a creditor whose indebtedness accrues before deed to promised donee, but after oral gift, can not reach the donated premises.   Dougherty v. Harsel, 91 Mo. 168. (2)   Where a parent promises to give, in the future, certain premises or real estate to one of his children, and said child comes into possession by consent of the parent under said promise and remains in possession, and makes improvements in reliance thereon, a court of equity will decree title in the promised donee.   Dougherty v. Harsel, 91 Mo. 168; Hubbard v. Hubbard, 140 Mo. 308.   (3)   Oral gift may be proven by declarations of the donor.   Allen v. Mansfield, 108 Mo. 346; Hubbard v. Hubbard, 140 Mo. 303.   (4)   Conversations or admissions on part of husband can not affect wife's rights, even if made in her presence; even sole deed of husband can not affect wife's right under oral gift accompanied by possession and improvements.   No act of his can so operate as to affect her rights or compromise her equitable title.   White v. Ingram, 110 Mo. 482; Henry v. Snead, 99 Mo. 425; Mueller v. Kaess-

man, 84 Mo. 327. (5) Actual possession of real estate is notice of all the rights and equities therein of the person occupying the same, and any one purchasing the premises takes with notice of said equities. Martin v. Jones, 72 Mo. 23; Fitzsimmons v. A. C. Brothers, 81 Mo. 37; Phelan v. Brady, 119 N. Y. 587; Libby v. Tibbetts, 121 N. Y. 172; Freeman v. Moffitt, 119 Mo. 302.

*Wilson Cramer* and *J. B. Denis* for respondents.

ROBINSON, J.—This is a proceeding in equity to obtain specific performance of a parol contract alleged to have been made between plaintiff and her father, W. H. Whitwell, deceased, in 1879, to convey a certain tract of land in Stoddard county, Missouri, containing about 165 acres, known as the "gin farm." The plaintiff, who is the wife of Chase Gibbs, commenced this suit in the Stoddard Circuit Court on August 7, 1897, against the Whitwell heirs and grantees, claiming the land by virtue of a parol gift from her father. On application of M. A. Grissom, one of the defendants, the court changed the venue to the Cape Giradeau Court of Common Pleas.

Plaintiff predicates her right to recover in this case upon the allegation in her petition that the land in question formerly belonged to her father, who, in December, 1879, put her and her husband in possession under a verbal agreement to the effect that if she would move upon the land and make a home of the same, he would convey it to her. That in pursuance of said contract plaintiff and her husband moved upon the land and made valuable and lasting improvements thereon; that her father failed to convey the same to her during his lifetime.

The answer of defendants Rodney and Cramer averred that on March 13, 1887, W. H. Whitwell undertook and intended to convey the land in controversy to his wife, Mary J.

Whitwell, and in pursuance of that purpose executed to one A. W. Hunt his deed of conveyance, which deed was duly recorded in the land records of Stoddard county, whereby he intended to convey the land to said Hunt to be by him transferred to his wife, Mary J. Whitwell; that on June 27, 1887, Hunt by warranty deed, duly executed and recorded, undertook and intended to convey the land to Mrs. Whitwell, who thereupon went into possession of the land thereunder, and occupied the same continuously up to the time of her death; that on August 11, 1894, Mrs. Whitwell executed a deed of trust thereon to Wilson Cramer, trustee for K. J. B. Dennis, to secure the payment of a promissory note for $1,000. The answer then avers that this note had been assigned by said Dennis to defendant Rodney and that same remains due and unpaid, and that by mutual mistake, and oversight between the parties thereto, the land intended to be conveyed by the several conveyances above adverted to was in part erroneously described, and prayed for the correction of the error of description and a foreclosure of the deed of trust. The administrator of the estate of Mrs. Whitwell entered his voluntary appearance and put in issue the matter set up in the answer by a general denial.

The reply was a general denial. Upon the trial, the court found for the defendants, dismissed the bill, and decreed the correction and reformation of description complained of, ascertained the amount due on the note secured by the deed of trust, and foreclosed the same. From this action of the trial court, plaintiff has appealed.

The principal question presented for determination here is, whether the evidence is sufficient to establish the agreement alleged in the petition, and if so, whether there was such performance of it, on the part of the plaintiff as to take the case out of the operation of the statute of frauds, and justify a decree for specific performance.

Gibbs v. Whitwell.

It is uniformly held by the appellate courts of this State that a verbal contract for the sale of land should be established by competent proofs, that is clear, definite, and unequivocal in all its terms; that if the terms are uncertain or ambiguous, or not made out by satisfactory proof, a specific performance will not be decreed.

The law on this subject is thus closely expressed by Pomeroy in his excellent work on Specific Performance, section 108: "A plaintiff can not, in the face of the statute, prove a verbal contract by parol evidence, and then show that it has been partly performed. This course of proceeding would be a virtual repeal of the statute. He must first prove acts done by himself or on his behalf, which point unmistakably to a contract between himself and the defendant, which can not in the ordinary course of human conduct, be accounted for in any other manner than as having been done in pursuance of a contract, and which would not have been done without an existing contract; and although these acts of part performance can not, of themselves, indicate all the terms of the agreement sought to be enforced, they must be consistent with it, and in conformity with its provisions when these shall have been shown by the subsequent parol evidence. It follows, from this invariable rule, that acts which do not unmistakably point to a contract, existing between the parties or which can reasonably be accounted for in some other manner than as having been done in pursuance of such a contract, do not constitute a part performance sufficient in any case to take it out of the operation of the statute, even though a verbal contract has virtually been made between the parties."

The rule is well settled that acts which are referable to something else than the verbal agreement, and which may ordinarily be otherwise accounted for, do not constitute a part performance of it.

It appears from the evidence introduced at the trial that plaintiff's father, W. H. Whitwell, purchased the farm in controversy in April, 1879, from Clara Pond, taking the title in his own name, the purchase money, however, having been furnished and paid by Mrs. Whitwell out of her separate estate. On the fourth of January following, plaintiff and her husband, Chase Gibbs, who, it seems, had been living with her father and mother in the town of Advance in Stoddard county, where the former was engaged in merchandising and the latter in keeping boarders, moved into one of the houses upon the farm in question, occupied it and cultivated a portion of the land until Mr. Whitwell's death in 1887, without paying rent; but during this time plaintiff's husband did repair the fences, improved the house, set out a few fruit trees and cleared some brush off of the land, at an aggregate cost, however, not to exceed one hundred dollars, but never paid any of the taxes due upon any part of the land, that being done at all times by the Whitwells. The deceased had one son and two other daughters, and all the land except this farm was in his wife's name. On the thirteenth day of March, 1887, W. H. Whitwell, for the purpose of passing the title of this land to his wife, Mary J. Whitwell, who had paid for the same, joined in the execution of a deed of conveyance of the land to one A. W. Hunt, who, on the following June 27, in turn, conveyed the same to Mrs. Whitwell, and on August 11, 1894, the latter executed a deed of trust thereon to Wilson Cramer, as trustee for J. B. Dennis to secure the payment of the promissory note for $1,000 given by her to Dennis.

After Mr. Whitwell's death, which occurred later in the year 1887, Gibbs gave Mrs. Whitwell one third of all the crops raised on the land cultivated by him (about 40 acres) as rent therefor, and Mrs. Whitwell paid the taxes on the entire farm during her lifetime. The Gibbses only took possession of and

exercised control over the house occupied by them and that portion of the land actually cultivated by them. The other house, a little log cabin, and the land situated on the east side of the county road had been rented continuously by Mrs. Whitwell, and cultivated by different persons for eleven or twelve years prior to her death, which occurred in 1895, and the rent therefor paid to her. Neither the plaintiff nor any one for her, ever paid any taxes on this farm or any part thereof.

It may be remarked at the outset that possession by plaintiff and her husband, under the circumstances disclosed by this record, does not authorize the inference that such possession was either taken or held, under a promise that it was to be given to her. Such possession is equally as consistent with a mere license to occupy and cultivate the same as with a promise that it was given to her.

The evidence offered by plaintiff in support of the alleged promise to give the farm in question to her, consists entirely of declarations and admissions made by her father in conversations with third persons, and testified to by the witnesses from memory after the lapse of many years.

Jacob Akert, an intimate friend of Mr. Whitwell, during his lifetime testified that in the fall, before the latter's death, he had a conversation with him touching plaintiff's occupancy of the farm in controversy, during the course of which he said "that just as soon as he could get this land straightened out he was going to divide all this land between his children." The witness was then asked by plaintiff's counsel what Mr. Whitwell said about this particular tract of land, to which he answered, "Well, he was going to divide it; he was going to give a piece to Mrs. Gibbs and then the others came in—Revelle was next." The witness was further asked what he said about the "gin farm" to which the witness answered, "That was the piece he was aiming to give Mrs. Gibbs." Subsequently on

cross-examination, defendants' counsel brought out the fact, that in the course of the conversation, Mr. Whitwell spoke of both the Horner place and the "gin farm." Counsel for defendants then inquired of the witness if Mr. Whitwell was going to divide the "gin farm" among his children, to which the witness answered, "As soon as he got everything straightened up said he was going to divide it (the gin farm) among his children." Henry Freeze, who is a brother-in-law of plaintiff, testified, that the plaintiff and her husband had been living on this land for seventeen years and during that time had cleaned off some thickets, repaired the fences, and improved the house. He further testified that neither the plaintiff nor her husband paid any rent during the lifetime of Mr. Whitwell.

Thomas Whitknack testified that before the plaintiff moved upon the farm in question he heard Mr. Whitwell say that he had bought this farm for her. The witness was then asked by counsel for plaintiff to "state whether you heard him say anything about their occupancy of the place after they moved on," to which he answered, "He put them on the place, as he said, for he wanted to see if they could get along there."

Smith Oaks testified to a conversation with Mr. Whitwell at Advance, during which the latter, in speaking of the "gin farm," said "that when he realized in a certain lawsuit he intended Gibbs's wife to have that place—and some one or two others I believe."

John A. Gardner testified that in a conversation with Mr. Whitwell on Christmas day, 1879, before plaintiff moved upon the land, he said, "I have bought that farm for Chase Gibbs's wife, and I'm going to let them have it and move into it." The witness was further asked if he ever heard Mr. Whitwell say anything about it after they moved in and he replied that as he was passing Whitwell's store about twenty days after Gibbs moved into the house, he remarked that the Gibbses had moved

in, and Mr. Whitwell replied, "Yes, I bought that place and gave it to Chase and his wife and now I want to see if they can make a living."

The foregoing is in substance all the evidence offered by plaintiff bearing directly on the terms of the arrangement under which plaintiff and her husband took possession, and made the improvements before mentioned.'

This evidence utterly fails to show that plaintiff took possession and improved the land under a promise that it was given to her, or with the expectation that it would be given in the future. It is clear that both the plaintiff and her husband regarded this arrangement with Mr. Whitwell in the light of a simple license to occupy and cultivate the farm without payment of rent.

The character of the improvements made by plaintiff's husband upon the land was only such as would naturally occur in the ordinary course of husbandry by those permitted to use land for an indefinite time free from the payment of rent, and therefore can not be said to have been made in consequence of, and in reliance upon the alleged agreement with plaintiff's father, W. H. Whitwell.

Moreover, such improvements were afterward paid for by Mrs. Whitwell under an arrangement with Gibbs, as the result of an arbitration, whereby the value thereof was deducted from the rent of that portion of the farm occupied and cultivated by the latter during the years 1892-1893.

Besides, the evidence shows conclusively that the plaintiff and her husband only exercised control over that portion of the farm actually cultivated by the latter and in consideration for the use of this land, paid Mrs. Whitwell a crop rent of one-third of all the grain grown thereon.

The remaining portion of the farm, including the log cabin, was rented by Mrs. Whitwell to different persons con-

tinuously for more than twelve years before her death.

It further appears that Mrs. Whitwell, at all times after her husband's death, exercised personal supervision and control over the entire farm, accompanied by the usual acts of ownership, such as paying taxes, collecting rents, and the like, and this, too, without any objection whatever from Gibbs or his wife. At no time since the death of plaintiff's father has she or her husband been in the exclusive possession of the entire tract of land sued for.

After defendant's counsel had brought out the fact that Gibbs was paying rent to Mrs. Whitwell for part of this farm, and that the rest of the land had been regularly rented by Mrs. Whitwell to other parties, who paid her the usual rent thereon, counsel for plaintiff then introduced Chase Gibbs who testified in rebuttal that he let Mrs. Whitwell have a part of the farm to rent. The witness further stated in response to a question asked by plaintiff's counsel, "that Mrs. Whitwell always paid the taxes on the farm, but we let her have stuff off the farm to pay it with." No good reason appears, nor has counsel suggested, why plaintiff's mother, who was engaged in keeping boarders, should invariably pay the taxes, then take a part of the crop raised by plaintiff from the place each year in paying for the money so advanced by her which she in turn would have to sell as she could not use it. This testimony, in view of the attempt made by Gibbs during the trial to make a corrupt deal with defendants Freeze and Revelle, whereby they should receive part of the land if plaintiff recovered, is not entitled to much weight. His explanation of the entire transaction is far from satisfactory. It is inconceivable why Mrs. Whitwell should pay the taxes, collect rent for the use of the farm, from Gibbs and others, and generally treat the farm as her own and pay Gibbs for the improvements made thereon, if the land belonged to plaintiff. These facts and circumstances are not only

inconsistent with the alleged promise plaintiff claims to have relied on but amount to a practical recognition of title and ownership in Mrs. Whitwell.

The evidence clearly shows that nothing more than a mere license to occupy one of the dwelling-houses and cultivate a portion of the land was contemplated by plaintiff's father when he placed her and her husband upon the farm. If the farm had been given to plaintiff, Mrs. Whitwell would not have been expected to pay the taxes, neither could she have charged any rent for the use of the land.

These facts in connection with the admission made by Gibbs that the taxes on the land were paid by Mrs. Whitwell, as well as the character of the possession taken of the land by Gibbs, which at best was not exclusive, his payment of rent and otherwise treating and recognizing Mrs. Whitwell as the owner, are utterly inconsistent with the contract alleged and relied upon by plaintiff.

Taking all these facts and circumstances together, the conclusion is irresistible that Gibbs and his wife did not take exclusive possession of the land, and make the improvements thereon in reliance upon a promise that the farm was given or was to be given to her.

The evidence in our opinion is not sufficient to authorize a decree for specific performance. The judgment of the court below is therefore affirmed. All concur.