# ED MEEGAN, Respondent, v. ILLINOIS SURETY COMPANY, Appellant.

### Kansas City Court of Appeals, February 21, 1917.

1. **PRINCIPAL AND AGENT: Authority: Guaranty Bond: Street Paving.** A contractor to pave a street in a city sublet the job to another who gave him the bond of a surety company, in the sum of $2000 that he would carry out his subcontract. The contractor became convinced that the subcontractor would fail and so reported to the general agent of the surety company who had executed the bond for the company and, without any additional premium, entered into a verbal contract that if the contractor would complete the job, pay the pay roll and all other expenses, and pay also $1200 for rock he had furnished the subcontractor, it would reimburse him in an *unlimited* amount. It was *held* that the agent had no implied authority to make such contract.

2. **STATUTE OF FRAUDS: Verbal Contract: Street Paving.** An agent of a surety bond company gave its guaranty bond in the sum of $2000 to a street paving contractor that his subcontractor would perform his subcontract. Afterwards, on it appearing the subcontractor would fail, the agent made a verbal contract with the contractor that if he would finish the job the company would reimburse him in any amount. It was *held* that the contract was not enforcible under the Statute of Frauds.

3. ———: **Partial Performance.** On a plea of part performance to avoid the Statute of Frauds, if it appears that the partial performance was probably referable to some other contract, the plea will not be substained and the statute applied.

4. ———: **Satisfaction of Debt of Third Party.** On a plea to avoid the Statute of Frauds, that the debt of a third party promised to be paid, had become the debt of the promisor in a verbal contract and therefore was not within the statute, it must appear that the debt of the third party has been satisfied.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

REVERSED.

*Grant I. Rosenzweig* for appellant.

*Guthrie, Gamble & Street* and *V. L. Nance* for respondent.

ELLISON, P. J.—Plaintiff's action is founded on con- tract. It involves the power or authority of an agent to bind defendant. The trial court sustained the authority and defendant appealed.

It appears that plaintiff had a written contract with Kansas City, Missouri, for paving several blocks of a street with concrete, for which he was to receive from the city ninety-eight cents per square yard in tax bills issued by the city. The petition alleges that after get- ting a quantity of rock on the ground plaintiff sub-let the job to one Ware, whereby the latter was to perform the work and obligations of plaintiff to the city, and to pay plaintiff $1200 for the rock, and plaintiff would advance him during the progress of the work the amount of the pay roll expended, not exceeding three thousand dollars, plaintiff to receive seven per cent interest on the sum so advanced and upon completion of the work plaintiff would receive tax bills agreed by the city to be paid him and credit Ware with their amount, less eight per cent, in settlement with Ware for the rock and plaintiff's ad- vances to him. A written memoranda of this contract was made.

It is then charged that after he made this contract with Ware, he obtained a written surety bond from defendant in the sum of $2000, conditioned that Ware would faith- fully comply with his contract with plaintiff. That by the terms of this bond, defendant was to be notified by registered letter of any default of Ware, which might involve a claim against it, within forty-eight hours after the occurrence shall be known; and within thirty days should file written proofs showing the default, with de- fendant's principal office in Chicago. And that defend- ant as such surety, should have the right, if it saw fit, to carry out the contract, or to sublet it.

It is then charged that afterwards, during the course of Ware's work in carrying out his contract with plain- tiff, it became evident to him that Ware was unable to carry it to a successful and proper finish because of lack of money, and that he thereupon notified defendant sure- ty of the situation and that there would be a loss for de-

fendant to pay unless the contract was carried out by some other person. That defendant wishing to avoid loss as much as possible, verbally agreed with plaintiff that if he (plaintiff) would take up and complete the work and and render to it a statement showing cost, including amounts already advanced to Ware, with credit for the tax bills as agreed, that defendant would pay the balance. That plaintiff thereupon accepted such proposition and completed the work at the total cost of ten thousand and twenty-two dollars and seventy-seven cents. That crediting this total with the tax bills received less interest, etc., there was a balance of $1447.23, left due to plaintiff under his contract with defendant, which it refused to pay.

It seems that this verbal contract, thus alleged to have been made by plaintiff and defendant and upon which this action is founded, was made for the defendant by one J. P. Bray an employee of Stowell & Co. in charge of the "Liability & Surety Department;" and his authority to make such contract, and the validity of such contract, conceding his authority, are the questions involved in the case.

It appeared in the evidence that the bond was signed by defendant through C. D. Stowell its "Attorney in fact." It further appeared that the contract between plaintiff and Ware was in writing attached to the bond and that it read as follows:

"This contract entered into this third day of October, 1912, by and between W. M. Ware, party of the first part of Kansas City, Mo. and Ed Meegan of Kansas City, Mo., party of the second part.

The party of the first part agrees to pay the party of the second part twelve hundred ($1200) dollars for rock on ground at 41st street and Flora Ave.

The party of the second part is to have the tax bills issued for concrete paving on Flora Ave. from 40th to 45th street, 9253 square yards at 98 cents per square yard, and pay the face of said bills less eight per cent after the material and labor bills are paid, also to furnish

money for pay roll on said street at seven per cent interest.

The pay roll on said street is not to exceed three thousand ($3000) dollars.''

It appeared that ''C. D. Stowell & Co.'' had an office in Kansas City in which Stowell transacted business for several insurance companies and that on the business letter head used by Stowell there were these words: ''General Agents, Illinois Surety Company, Fidelity and Surety Bonds;'' and ''Western Casualty and Guaranty Insurance Company.'' And under those words, these appeared: ''Liability and Surety Department, J. P. Bray, Manager.''

Plaintiff conceded that he did not undertake to do anything in his verbal contract with Bray that he was not already obliged to do by his original contract with the city. He merely reported to Bray that Ware was likely to fail in his contract with plaintiff; whereupon (according to plaintiff) Bray, acting for defendant, agreed verbally with plaintiff, that if the latter would complete the work according to the terms of the contract between himself and the city and collect the tax bills,'' that defendant would pay plaintiff $1200 for the rock and all amounts theretofore advanced or to be advanced by plaintiff on the work to or for account of said Ware, with interest at seven per cent on the pay roll, and all amounts thereafter advanced or paid by plaintiff for the completion of said work, less the amount of the tax bills received, less eight per cent.''

The foregoing discloses that defendant, being bound in a written contract in the limited sum of $2000, on certain conditions, the agent Bray substituted, without additional premium, by verbal contract, an obligation for an *unlimited* sum *without* conditions. Plaintiff himself in referring to the new contract, testified that, ''There was not any limit, not a hundred, or five hundred, or a thousand, or ten thousand dollars. I was just told to go ahead and see it through and they would pay me whatever it was.''

We are of the opinion that the new contract was not within the implied authority of the agent. The cases in this State have been liberal in recognizing authority in agents of insurance companies to waive provisions of policies (Thompson v. Ins. Co., 169 Mo. 12; Nickell v. Ins. Co., 144 Mo. 420; Springfield Laundry v. Ins. Co., 151 Mo. 98), but we are not advised of any case holding that implied authority exists in an agent of an insurance company to set aside its written policy of insurance or its bond of guaranty, in a limited amount, by substituting a verbal contract in an unlimited amount, and that without additional premium.

The case has brought out much interesting discussion between counsel and though nothing has been found with direct application to the facts in this record, yet much authority has been examined on the general question of an agent's implied authority.

But, in addition to the foregoing, we think the verbal contract in suit was a promise to pay the debt of a third person and is nonenforceable under section 2783, Revised Statutes 1909, of the Statute of Frauds. This statute does not apply to a case where the debt, though it may have been the debt of a third party, is made the debt of the verbal promisor, by his contract. But in such case, the original debtor must be discharged and the new promiser looked to alone. [Mallory v. Gillett, 21 N. Y. 412; Haberle v. O'Day, 61 Mo. App. 390.] There is no evidence that plaintiff in accepting defendant's (alleged) promise discharged Ware.

But plaintiff claims that he has performed his part of the agreement and thereby, he insists, the statute is left without application. It is true that in certain instances, performance of a verbal contract will avoid the statute. But such performance must have undoubtedly been done in obedience to the verbal contract. If such performance may be reasonably referable to some other contract, or some other motive, it will not affect the application of the statute. [Walker v. Bohannan, 243 Mo. 119, 136, 140; Wales v. Holden, 209 Mo. 552, 576; Gibbs v. Whitwell, 164 Mo. 387, 391; Rogers v.

Wolf, 104 Mo. 1, 9; 10; Sitton v. Shipp, 65 Mo. 297, 302.] In Wales v. Holden, supra, the Supreme Court said "that a part performance should be of a character not only consistent with the reasonable presumption that what was done was done on the faith of such a contract, but also that it was unreasonable to presume that it was done on any other theory;" and that this should be established beyond reasonable doubt. In this case, as we have already stated, the testimony, given by plaintiff himself, shows that he was obligated by his original contract with the city to do the very things he is now claiming as a part performance of his verbal contract with defendant. He stated, in terms, that "I did nothing outside of my contract with the city."

We think plaintiff is without legal standing and the judgment will be reversed. All concur.

## SEPARATE CONCURRING OPINION.

TRIMBLE, J.—The case should be reversed (without remanding), unless there is substantial evidence from which a jury could find either that Bray, as a member and executive in the establishment of C. D. Stowell & Co., had *actual* authority to make the verbal agreement by which the liability arising under the surety bond was to be discharged, or that Bray had such *appearance* of authority as will estop defendant from relying upon lack of authority.

And the authority in question is not authority to *adjust* or *settle* a liability which the principal has had an opportunity to consider and has *recognized* by turning the claim over to the adjusting agent for settlement. The authority involved in this case is authority to *concede liability* on the surety bond and to *settle that liability* in an *unusual* way and one that is wholly different from the way in which the surety bond specified and the way in which liability in such contracts are usually discharged.

The evidence relied upon as tending to show authority, is, in substance, that of the letter head of C. D. Stowell & Co. having printed thereon in *red ink,* in cir-

cular form, the words ''C. D. Stowell & Co. Insurance''
and within this circle in a triangular shape, the words
·''Prompt service, Fair adjustments, Strong Companies''
and in the upper left hand corner the words ''General
Agents, Illinois Surety Co., Fidelity and Surety
Bonds,'' and below this the words ''Liability and Surety
Department, J. P. Bray, Manager.'' Also that Stowell
had signs hanging in his office with his name thereon
as General Agent, and that he testified he himself was
held out to the public in Kansas City as General Agent.
The evidence is that he was the only general agent of
the company in western Missouri.

. ' There is no direct or express evidence that Bray
had actual authority from the firm of J. D. Stowell &
Co. or the authority of a general agent from the de-
fendant. All transactions of plaintiff were had wholly
with Bray and no one else.

' The verbal agreement relied upon by plaintiff is of
so unusual a nature as, of itself, to warn plaintiff as
a reasonably prudent man that it was not within his
authority to make. Hence he could not assume, from
the appearances then existing, that Bray had authority.·
[Kissell v. Ry., 188 S. W. 1121.] And it must be
remembered that the authority in this instance was, not
authority to settle or adjust a recognized and matured
claim, but one theretofore unmatured, unrecognized and
only impending in the future. ·

The evidence as to Crowell's letter in reply to
plaintiff's claim when finally submitted through his at-
torney, does not concede Bray's authority in any way,
and being after the transaction was over, could not
be relied upon by way of estoppel.

Bray does not seem to have been anything more
than a subagent under Crowell (though he may have been
a co-equal and constituent part of the firm). But it may
be a question whether the ordinary and usual powers of
even a general state agent of an insurance company
can be regarded as broad enough to enable him to bind
his principal to a recognition, by him, of a liability
as matured, when it was only likely to occur, and to

an agreement on his part to discharge that liability by a method wholly foreign to the usual methods of so doing.

## ON REHEARING.

ELLISON, P. J.—A rehearing was granted in this case and it has been reargued. Our position in the foregoing opinion on the question of the statute of frauds is attacked on the ground of not being applicable to the facts. This attack is resisted by defendant. It will not be necessary to say whether, on the facts, our discussion of the statute should be withdrawn as inapplicable to the case, for the reason that since we decided that the sub-agent Bray had no implied authority to make the contract on which the action is founded, the question raised as to the statute is not necessary to a disposition of the case. Our further consideration of the question of authority of the agent, has resulted in the conclusion at which we arrived on the original hearing. The judgment will therefore be reversed. *Trimble, J.,* concurs; *Bland, J.,* not sitting.