FRED DIECKMANN and FRIEDA DIECKMANN v. THOMAS R. MADDEN, Public Administrator, and Administrator of the Estate of IGNATZ ZAHRADA, also known as FRED ZAHRADA, FRITZ ZAHRADA; and LEOPOLDINE ZAHRADA SCHWARZBAUER, MRS. ANNA POHL, MARIA ZAHRADA, and all the unknown consorts, devisees, donees, alienees, immediate, mesne or remote, or voluntary grantees of IGNATZ ZAHRADA, Appellants.—160 S. W. (2d) 724.

Division One, February 26, 1942.

Rehearing Denied, April 16, 1942.

*Paul P. Hoegen* for Thomas R. Madden, Public Administrator, and *Detjen & Detjen* for Leopoldine Zahrada Schwarzbauer, Mrs. Anna Pohl and Maria Zahrada.

*Max Sigoloff* and *Herman Goralnik* for respondents.

BRADLEY, C.—Action for specific performance of an alleged oral agreement to devise real estate. It is alleged that Ignatz Zahrada, deceased, orally agreed with plaintiffs to devise to them a certain described lot known as 3534 Missouri avenue, St. Louis, and listed in the inventory of the Zahrada estate at $1730. The trial court found for plaintiffs and the named defendants appealed.

Plaintiffs, husband and wife, alleged that in June, 1938, it was mutually agreed between them and Zahrada that he would convey to them by deed, or devise by will, the lot in question "in consideration of plaintiffs furnishing food and preparing certain meals for

him for the rest of his natural life, also in consideration of the plaintiffs, at their own expense, keeping said premises in good repair, the deceased to furnish the necessary materials, and in consideration of the plaintiffs transporting him in their automobile to visit the grave of his wife, and also in consideration of plaintiffs taking him to various places of amusement and to visit with friends of plaintiffs." It is alleged that plaintiffs agreed "to furnish such food and meals and to perform all the obligations under said agreement for the remainder of the natural life" of Zahrada; that pursuant "to said oral agreement they fully performed the aforesaid services, as requested by deceased from time to time, and deceased accepted said services of plaintiffs and the benefits therefrom, which were all done and accepted in reliance upon said agreement made with deceased and fulfillment ▆▆▆ thereof in devising the aforesaid property to plaintiffs in payment for said services."

It is further alleged that Zahrada "fully intended to carry out said oral agreement with plaintiffs in executing a will whereby and wherein said deceased would have devised unto plaintiffs the aforesaid real estate and improvements, the deceased having directed his attorney to prepare his last will and testament and so provide, but deceased has failed to execute the same prior to his death; . . . that deceased died as a result of being struck by a street car on the 16th day of October, 1939, and died in the City of St. Louis, Missouri, on the 18th day of October, 1939, intestate, and by reason thereof the defendant, Thomas R. Madden, as public administrator of the City of St. Louis, took charge of the deceased's estate, and by reason thereof, was made a party defendant herein."

The answers were, in effect, general denials, except admission that Zahrada, at the time of his death, owned the lot involved. The answer of the next of kin alleged that "defendant Leopoldine Zahrada Schwarzbauer is a sister of the said decedent, Ignatz Zahrada; that the defendants, Anna Pohl and Maria Zahrada, are nieces of said decedent, being children of Franz Zahrada, a predeceased brother of said decedent, and that all of these defendants are next of kin and heirs at law of said decedent, who left surviving him no children or descendants, either natural born or by adoption, nor a widow, and whose father and mother predeceased him."

The court, over objection and exception, permitted plaintiff, Fred Dieckmann, to testify that he lived in the property at 3534 Missouri avenue, the property in question; that he had known Zahrada "since about 1937, when I moved into his property at 3534 Missouri avenue;" that Zahrada then lived on Illinois avenue; that Zahrada's wife died in 1938, and that after her death he continued "to come to our home;" that he saw Zahrada "about every day" and that he saw him "most out at my house."

John L. Wiget, for plaintiffs, testified that he was a gunsmith, but did "locksmithing on the side;" that he had known Zahrada since 1913, made doorlocks and keys for him; that in the summer of 1938, he made some door keys for doors at 3534 Missouri avenue; that Zahrada was there and that he heard plaintiffs and Zahrada talking. "He (Zahrada) told Mr. and Mrs. Dieckmann that if they would give him his breakfast and do him such favors once in a while as take him out in their automobile to certain places where he wanted to go, for instance, out to the cemetery and other places like that, that he would give them that house that they were living in at the present time. Q. And what did they say? A. They said they would do that. In that conversation he told Mr. Dieckmann if there was anything missing or any door locks out of order, or anything like that, why, he should get them repaired. He said he would desire them to give him his breakfast, look after the house and take him with them to the places that he mentioned as long as he lived. Dieckmann said, 'Well, that is perfectly satisfactory,' and that they would do that.''

Wiget said that later Zahrada told him that plaintiffs were "very good to him;" did "a great deal for him;" that he "had nobody else that he could depend on;" that he wanted to do all he could for them, and that he wanted "to make over that house (in question) to them in case of his death." Wiget said that subsequent to the conversation he heard between plaintiffs and Zahrada, he repaired some locks and fitted some keys for the property and that plaintiffs "paid for those repairs."

Nellie Harms, for plaintiffs, testified that her daughter had rented from plaintiffs light housekeeping rooms in the property; that her daughter got sick and that she (witness) was there about 6 months in 1939, and that Zahrada got his breakfasts at plaintiff's while she was there. "Q. Did Mr. Zahrada ever tell you he was satisfied with the meals prepared by Mrs. Dieckmann? A. Yes. He said he was satisfied because she prepared them in a German style like his wife did, and he was well satisfied. Mr. Zahrada stated in my presence to Mrs. Dieckmann, he said, 'Frieda, you keep the repairs up in this place,' he said, 'and prepare my meals and take me to amusement places the rest of my life,' he said, 'and this home will be left to you.' This conversation took place at a church picnic in 1939. We were sitting and talking, and he talked to the priests and all this and that and all, so he said he was very well pleased with the way they took him around to places where he wanted to go, and he said, 'The property on Missouri avenue will be left to Fred Dieckmann and Frieda Dieckmann on my death.' "

Nellie Harms also said: "I observed Mr. Dieckmann work in and around the building at 3534 Missouri avenue. He painted the whole garage and the fence in the front. He concreted the back cellar steps and two blocks on the concrete sidewalk. He also had a fruit cellar

put in the basement, that is a place that they concreted, or they had to make, to put their fruit in, and he put it in there so it would all be in a dry place. He made what I would call a pantry.''

Rose Weder testified that in 1939 plaintiffs visited her home and that Zahrada was with them, and that ''in our discussion around the house Mr. Zahrada made mention of his treatment by the Dieckmanns of him, and that some day he would remember them.''

Paul Hoegen, attorney for defendant, Madden, was called as a witness for plaintiffs, and testified that he was called to the City Hospital where Zahrada was taken after being struck by a street car; that Zahrada talked to him about the preparation of his will. ''After a brief conversation with him in reference to the contents of a proposed will, from which conversation I made some sketchy memorandums, various people came in and interrupted the proceedings, and I could get no further in the matter of drawing the will than his telling me the locations of several pieces of real estate he owned, and of the people who occupied them, as well as the names of some of his relatives. It was planned to have him removed to a private hospital, but, unexpectedly, he died the same day. Now, in giving me directions for drawing his will he stated that he wished the property at 3534 Missouri avenue devised to Fred Dieckmann. The property at 3533 Illinois avenue to Herman, and the property at 3427 Henrietta to the daughter of Joseph Hartt.''

The memo made by Mr. Hoegen was introduced by plaintiffs. It contained some names, and ''3534 Mo.,'' under which was the name of plaintiff, Fred Dieckmann; ''3533 Illinois,'' under which was the name, William Herman; ''3427 Henrietta,'' under which was ''Joseph Hartt daughter.''

Plaintiff used other witnesses, but it will not be necessary to further state the evidence from plaintiffs' case.

Mrs. William Herman, for defendants, testified that she lived in the property at 3533 Illinois avenue, mentioned in the Hoegen memo, supra. She testified: ''After the death of his wife, Mr. Zahrada lived at 3533, downstairs. We had the upper flat, and he lived downstairs. Mrs. Zahrada died the 30th of June, 1938. Mr. Zahrada continued to live on Illinois avenue after the death of his wife. . . . I never saw him eating at the Dieckmann home, except several times on Saturday, but not in the morning. I live right across the alley from the Dieckmanns. I never saw him go over there about breakfast time.''

William Herman, for defendants, testified: ''I was acquainted with Mr. Zahrada. He owned the property that I lived in then and now live in. I had occasion to do some maintenance work on Mr. Zahrada's property on Missouri avenue (the property in question). He acquired that property about June, 1936. I done repair work over there and I done painting over there. When they bought the place I re-

paired pipes and valves down in the basement, and I repaired porches and painted the place. I painted the garage and the house and the front fence. In 1938 I gave the window sills a coat of white, and in 1939 I painted the whole place. The house and garage in the back; outside painting. That was in 1939. Only Dieckmann helped. That was all. Mr. Zahrada supplied the material for that painting. There were two coats given. When they first bought the place in 1936 a fellow by the name of Miller painted the place. That same summer he painted the house and garage two coats. In 1938 I painted the sills, and in 1939 the whole place was painted by me and Mr. Dieckmann helped me. I did the larger part of the work. Mr. Dieckmann helped paint once in a while. That is about all I ever done there. Q. Do you know where he ate? A. He ate at our house, and the rest of the time he ate over at Leber's saloon or Bittner's saloon.''

Defendants introduced evidence tending to show that the value of the work and repairs claimed to have been done and made by plaintiffs did not exceed $100.

In Selle v. Selle et al., 337 Mo. 1234, 88 S. W. (2d) 877, the subject of oral contracts to convey real property was considered at some length. In that case it was pointed out [88 S. W. (2d) l. c. 880] that each case ▮▮▮▮ must rest on its own facts, and that in some cases the statute of frauds has been successfully interposed as a defense, and that in other cases the statute has not been permitted to defeat recovery. [See cases cited—88 S. W. (2d) l. c. 880.]

It is stated in the Selle case [88 S. W. (2d) l. c. 881] that the general rule, and our rule is, under such contracts, that although the contract is oral, if the contract has been fully performed by the party agreeing to render the service so that a denial of specific performance would work a fraud on the party who has fully performed, then the statute of frauds cannot be successfully invoked as a bar to recover.

It is also stated in the Selle case [88 S. W. (2d) l. c. 881] that one obstacle in the path of one seeking specific performance of such contracts is that if the service rendered can be easily compensated for in money, then specific performance won't lie.

Handed down concurrently with the present opinion is the opinion in Herman v. Madden et al., 349 Mo. 447, 162 S. W. (2d) 268. That case was to enforce specific performance of an alleged oral agreement to devise the Illinois avenue property mentioned in the Hoegen memo, supra. The plaintiff in that case is the witness, Herman, supra. The judgment for the plaintiff in the Herman case was reversed. The opinion quotes, from Forrister v. Sullivan et al., 231 Mo. 345, l. c. 373, 132 S. W. 722, the required essentials to authorize specific performance in such cases. Among the seven separate essentials required is the following: ''The contract must be grounded on an adequate and legal consideration and it should be made clear to the

mind of the chancellor that the law could not give adequate and perfect relief in damages, thereby attaining the full end and justice of the case and reaching the whole mischief; hence, the interference of equity is necessary to do rounded justice."

In the present case it will not be necessary to determine whether the alleged oral contract to devise was grounded on an adequate and legal consideration. It will be sufficient to rule the question as to whether plaintiffs had an adequate remedy at law.

Plaintiffs introduced the Zahrada estate inventory, which totaled $18,595.03, and consisted principally of cash and real estate. The cash was $7521.03. It does not appear that there were any debts. In the situation it certainly could not be "made clear to the mind of the chancellor" that plaintiffs did not have an adequate remedy at law as to any claim they might have had against the Zahrada estate.

The judgment should be reversed and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.