WILLIAM HERMAN v. THOMAS R. MADDEN, Public Administrator of the Estate of IGNATZ ZAHRADA, deceased, also known as FRED ZAHRADA, also known as FRITZ T. ZAHRADA, also known as IGNAZ ZAHRADA and FRITZ ZAHRADA; and LEOPOLDINE ZAHRADA SCHWARZBAUER, MRS. ANNA POHL, MARIA ZAHRADA, and the Unknown Heirs of IGNATZ ZAHRADA, deceased, consorts, heirs, devisees, donees, alienees, or immediate mesne or remote grantees, Appellants.—162 S. W. (2d) 268.

Division One, February 26, 1942.

Rehearing Denied, April 16, 1942.

Motion to Transfer to Banc, Denied, June 3, 1942.

*Paul P. Hoegen* for Thomas R. Madden, Public Administrator, and *Detjen & Detjen* for Leopoldine Zahrada Schwarzbauer, Mrs. Anna Pohl and Maria Zahrada appellants.

448

*Raymond L. Farmer* for respondent.

 CLARK, J.—Suit for specific performance of an oral contract to devise real estate. The decree was for plaintiff in the circuit court of St. Louis city and defendants appeal.

The petition is against the administrator and heirs of Ignatz Zahrada, deceased, and alleges: in March, 1925, plaintiff became a tenant of Zahrada at 3533 Illinois Avenue in St. Louis; plaintiff and his wife rented the upstairs portion of the premises and Zahrada and his wife lived in the downstairs portion; Zahrada often asked plaintiff to make repairs and do odd jobs around the premises and also around the premises at 3427 Henrietta Avenue, in said city, each of which was owned by Zahrada and his wife; that plaintiff, without any definite agreement, but expecting to be paid, did such work until June, 1927, when Zahrada orally "promised and agreed with plaintiff at that time that if he would undertake such services and assist him therein that he would compensate him for his services by giving him as compensation therefor the property where plaintiff resided. The same to be left to plaintiff in his will upon the death of the said Zahrada;" that Mrs. Zahrada consented to this agreement; she died on June 3, 1938; that plaintiff fully performed the agreement on his part, alleging certain repairs made by him; that Zahrada was hit by a street car on October 16, 1939, and died in a hospital two days later without leaving a will.

Cases similar to this have often been decided by this court. [Forrister v. Sullivan, 231 Mo. 345, 132 S. W. 722; Oliver v. Johnson, 238 Mo. 359, 142 S. W. 274; Sitton v. Shipp, 65 Mo. 297; Gibbs v. Whitwell, 164 Mo. 387, 64 S. W. 110; Rosenwald v. Middlebrook, 188 Mo. 58, 59, 86 S. W. 200; Walker v. Bohannan, 243 Mo. 119, 147 S. W. 1024; Russell v. Sharp, 192 Mo. 270, 91 S. W. 134; Bick v. Mueller, 346 Mo. 746, 142 S. W. (2d) 1021; Schweizer v. Patton (Mo.); 116 S. W. (2d) 39; Selle v. Selle, 337 Mo. 1234, 88 S. W. (2d) 877.]

 The requirements to authorize the specific enforcement of such a contract are well stated in the first case cited, supra, Forrister v. Sullivan, 231 Mo. l. c. 373, 4, as follows:

"(a). The conversations relied on as proof of the contract should not be too ancient, loose and casual.

"(b). The contract should be fair and just, not a fetching, biting or otherwise unconscionable bargain—regard being had to the condition in life of the parties.

"(c). The terms of the contract should be so clear and definite as to free it from ambiguity and leave no doubt in certainty of terms or intendment.

"(d). The proof must show not only that some contract was made, but that the contract counted on in the bill was made.

"(e). Performance must be shown as far as practicable. It must be unequivocal. The acts relied on to show performance must in their nature be referable alone to the very contract sought to be performed; for it is only thereby, because of the benefits arising

to the promisee, that his conscience and that of those claiming under him are bound. In a word, the acts relied on to show performance must point unerringly to the contract in suit and to none other. There must be an absence of doubt or equivocation throughout the whole case in pleadings and proof. From end to end it must be made out beyond a reasonable doubt and the state of the proof must bring the case within the reason of the exception to the statute, viz., that not to perform in kind, or in sort, would itself be a fraud.

"(f). The contract must be grounded on an adequate and legal consideration and it should be made clear to the mind of the chancellor that the law could not give adequate and perfect relief in damages, thereby attaining the full end and justice of the case and reaching the whole mischief; hence, the interference of equity is necessary to do rounded justice.

"(g). A mere testamentary disposition to devise by will or a mere benevolent disposition to convey by deed, by way of gift or as a reward for services not plainly provoked by and bottomed on the contract in suit, will not take the case out of the statute."

We now apply the standards above set forth to the evidence introduced in the instant case. In doing so, we must give due deference to findings of fact made by the trial chancellor, but are not bound thereby. [Selle v. Selle, 337 Mo. 1234, 88 S. W. (2d) 877.]

*Plaintiff's evidence*

Although the other party to the alleged contract was dead, the plaintiff was permitted to testify without objection. He said that for about two years he did "little odd jobs" around Zahrada's premises at his request, but without compensation; then, on June 19, 1927, "Mr. Zahrada told me if I would take care of his property in good shape he would will me that house on Illinois Avenue in his will, and I told him I will take a chance; whatever I had to do, I would do;" "under that agreement I was to take care of that property entirely;" that Mrs. Zahrada was present and said, "that goes for her also;" that after the agreement was made he worked around the premises at 3533 Illinois Avenue; fixed the fence, repaired the coal shed, painted the property about three times, made a frame for the cellar doors, repaired shutters and porches, painted the shutters, tore out boards all the way around the kitchen and plastered, painted the upstairs on the inside, and downstairs, made a brick walk about 25 feet; put in a concrete slab in the front yard, fixed water pipes, toilets, and put a roof on the coal shed and on the porches; also worked on the premises at 3427 Henrietta Avenue; put a pipe in the ash pit and about nine years ago painted the whole place; put in electric wire from upstairs down to the basement; many times put in window ropes; in 1939 repainted the whole place, garage and house; repaired the front and back doors and the lock on the garage; did some work on property at 3534 Missouri Avenue which Zahrada bought in 1937; repaired a water valve, painted the window sills, and in

1939 painted the whole place, garage and house with two coats. Plaintiff said he did this work when requested, in his spare time, in evenings and on Saturdays and Sundays and that he had received no pay; that Zahrada told him many times he had made a will and would provide for plaintiff; that Zahrada was hurt on October 16, 1939, taken to a hospital and died about two days later, leaving no will. On cross-examination: that he paid $16.00 per month rent for the last year and $18.00 per month before that; that he paid the rent promptly except at one time when out of work he got behind to the extent of $300.00; that he never got any credit on his rent for the work he did for Zahrada; plaintiff admitted that on several occasions other men did repair work on the Zahrada property. Plaintiff was asked to tell how much time he was employed in working for Zahrada but the chancellor sustained an objection made by plaintiff's counsel and this testimony was not admitted.

Plaintiff's wife gave testimony similar to that of plaintiff. She stated her understanding of the agreement thus: "He said that if Mr. Herman would take care of the property, keep it in repair, the property where we lived, he would leave it to him. Not only that, by his property he meant the other one too, but he was leaving him the one on Illinois."

Mrs. Quaade (sister of plaintiff's wife) and her husband, Charles Quaade, testified that they saw plaintiff making repairs on several occasions; Mrs. Quaade said she heard Zahrada say that plaintiff would get the house on Illinois Avenue in his will, and Mr. Quaade said he heard Zahrada say "I provided for him, that for doing this work he will get 3533 Illinois for the repairs he is doing on the property," and both these witnesses said Zahrada stated that plaintiff was doing his work well.

Carl Habig, next-door neighbor of plaintiff for seven years, said he saw plaintiff working at the Illinois Avenue house on a couple of Saturday mornings; also that Zahrada told him: "This is going to be Mr. Herman's home; he is doing this because I promised if he would keep this property in shape for me, whatever I thought it needed, or whenever I need him to do something, he would do it for me."

Arthur Fries said Zahrada stated: "The Hermans have taken care of my property, and I am going to see that they get that property when I pass away."

George Emling said he often saw plaintiff work on Zahrada's property on Saturday afternoons and Sunday mornings; that Zahrada mentioned several times that he was going to take care of plaintiff and once said he had made a will leaving to plaintiff the property on Illinois Avenue.

Mrs. Charles Leabig, Mrs. Margaret Loesch, J. I. Hayward, Ben Herman, brother of plaintiff, and Mrs. Ben Herman testified to varying versions of statements made by Zahrada to the effect that he was

452

going to will the property to plaintiff for the work he was doing and some of them said they had seen plaintiff making repairs.

Plaintiff offered as a witness Paul P. Hoegen, an attorney who represented one of the defendants at the trial and now represents him on this appeal. Mr. Hoegen said that Zahrada, while in the hospital, consulted him about making a will. Hoegen made some notes which, among other things, contained the following: ''3533 Illinois William Herman.'' He further said he was unable to get sufficient information from Zahrada and was uncertain whether he wished to devise the property on Illinois Avenue to the plaintiff or to the plaintiff's wife.

*Defendants' evidence*

Gustave Miller said he was employed by Zahrada and painted the house on Illinois Avenue in 1927 or 1928; later papered the kitchen downstairs, three times, and the upstairs where plaintiff lived; in 1932 or 1933 repaired a fence; also did some repair work on the Henrietta Avenue property.

John Busch did repair work on the Henrietta Avenue property.

Albert Koenig did repair work at various times on the Illinois Avenue property and also on that on Henrietta Avenue.

Frank Schwarze was asked to relate a conversation he had with Zahrada. When the question was asked, plaintiff's counsel first objected then withdrew the objection. The witness testified that Mr. Zahrada said: ''Mrs. Herman, she was very nice to my wife—she was one of the first ones when my wife died, came downstairs and took care of me, and she shall have the house where they are living in now.'' Plaintiff's counsel moved to strike out the answer because the statement was self serving. The court sustained the motion, although defendants' counsel pointed out that the objection to the question had been withdrawn.

Mrs. Frances Hort (whose husband was a nephew of Zahrada) lived in the Henrietta Avenue house for eight years; saw plaintiff do repair work several times and also saw various other named persons make repairs both on the Illinois Avenue and the Henrietta houses. This witness identified certain rent receipts signed by Zahrada and made out to plaintiff in 1939; they were received in evidence and contained words in German meaning ''for the work.''

Mrs. Kafka lived next door to the Henrietta Street house for thirty years; she saw various persons, other than plaintiff, make repairs there; at one time she saw plaintiff and another man do some painting; when the job was finished, plaintiff said to the witness: ''All we want is the boss' o.k. and then we will get the dough.'' This answer was stricken out on objection of plaintiff's counsel, but we think it was admissible as an admission or statement inconsistent with plaintiff's claim.

William Ulmer said he made repairs for Zahrada on both the Illinois and the Henrietta houses.

Mrs. Adele Wallace said she lived in the house on Henrietta Avenue for thirteen years up to 1933; never saw plaintiff do any work there, but there was much carpenter work and other repairs done there by other persons.

For many reasons we do not believe the evidence justifies us in rendering a decree for specific performance of the ▮▮▮ alleged contract. The contract pleaded was that plaintiff should make the necessary repairs both on the premises on Illinois and Henrietta streets. In his testimony plaintiff said "under that agreement I was to take care of that property entirely." From the context of his statement it is not entirely clear whether he meant to say he was to make the necessary repairs on both pieces of property or only on the Illinois Avenue property, but his wife definitely said the agreement included both places. A fair interpretation of the petition and plaintiff's testimony is that the agreement required him to make all, or substantially all, necessary repairs on both properties. Plaintiff and his wife, corroborated to some extent by other witnesses, testified to considerable work done by plaintiff, but plaintiff admitted that whatever work he did was done in his spare time, after working hours. He also admitted that at least some repairs were made by others. Testimony introduced by defendants minimizes the repairs made by plaintiff and there was much evidence that a large part of the repairs on both pieces of property were made by persons other than the plaintiff. By his own admission and by his own witnesses, it was shown that he did not make all of the repairs, and the evidence, as a whole, leads us to believe that plaintiff did not even substantially perform the contract.

Plaintiff denied that he received any pay for the work he did, but some doubt is cast on this denial by the testimony of Mrs. Kafka and also by the rent receipts marked "for the work."

Plaintiff had some corroboration of the agreement from statements claimed to have been made by Zahrada. However, one of his witnesses, Arthur Fries, said that Zahrada expressed an intention to devise the property, not to plaintiff alone, but to both plaintiff and his wife. Schwarze, one of defendants' witnesses, said Zahrada told him he intended to leave the property to plaintiff's wife for her kindness to him on the occasion of Mrs. Zahrada's death. Mr. Hoegen, in attempting to get information from Zahrada for drawing his will, was uncertain whether he wished to leave the property to plaintiff or to plaintiff's wife. Some of this testimony goes no farther than to show a disposition on the part of Zahrada to devise the property to plaintiff, to his wife, or to both.

On objection of plaintiff's counsel, he was not permitted to estimate the time consumed by him in making repairs. We think this evidence should have been admitted. The services claimed seem to be such that they could be adequately compensated in money. If so, plaintiff is not entitled to the aid of equity.

From consideration of the whole case, we hold that plaintiff failed to prove by clear, cogent and convincing testimony: either that he has substantially performed the alleged contract on his part, or that he had no adequate remedy at law.

Accordingly, the decree must be and is hereby reversed. All concur.