Argued September 14, reversed September 26, 1916.

## WOODS *v.* DUNN.

(159 Pac. 1158.)

### Wills—Agreement to Devise—Validity.

1. It is competent for one to make a binding agreement to devise real property by his last will, as the property of a living person is his own and he has a right to contract or alienate the title either by will or testament.

### Specific Performance—Agreement to Devise—Sufficiency of Evidence.

2. In a suit for specific performance of an agreement by defendant's deceased relative to devise to plaintiff certain realty in consideration of her promise to care for him and furnish him a home during the remainder of his life, evidence *held* to show the making of such agreement.

### Frauds, Statute of—Memorandum—Agreement to Devise Realty.

3. An agreement to devise real property is not within Section 808, L. O. L., providing that an agreement for the leasing or sale of real property, or any interest therein, shall be void unless it, or some memorandum thereof, expressing the consideration, be in writing, subscribed by the party to be charged, or by his lawfully authorized agent.

**Wills—Agreement to Convey—Statute.**

4. Section 804, L. O. L., providing that no estate or interest in real property other than a lease, etc., can be created except by conveyance or other instrument in writing, subscribed by the party creating it, etc., and Section 805, qualifying it to provide that it shall not affect the power of a testator in the disposition of his realty by last will or the power of the court to compel the specific performance of an agreement in relation to such property, and Section 7319, providing that every will shall be in writing, signed by the testator, or by some other person under his direction in his presence, and attested to by two or more competent witnesses in the presence of the testator, were satisfied by a duly executed writing or will, giving to plaintiff 200 acres of described land on the understanding that she should furnish testator a home and care for life.

**Specific Performance—Agreement to Devise—Consideration—Sufficiency of Evidence.**

5. In a suit for specific performance of an agreement between the defendant's deceased relative and plaintiffs, whereby he covenanted to devise to plaintiff certain land in consideration of her promise to care for him and furnish him a home during his life, evidence *held* to show that plaintiff had fully performed all the conditions thereof.

**Specific Performance—Agreement to Devise—Adequacy of Consideration.**

6. Under such agreement, made when deceased was 64 years of age and having a life expectancy of 11 years, who was uncouth in person and habit, requiring special attention, food and ever-increasing care, and made after he had had the advice of an attorney and understood the nature of the agreement, and after he had become dissatisfied with living with his relatives, and when he had property amounting to over $52,000, of which the part agreed to be devised was valued at about $12,000, the consideration was not so inadequate as to make its performance unreasonable and unjust, where deceased lived only four or five months after the agreement was made.

[As to specific performance of contract to make a will, see note in Ann. Cas. 1914A, 399.]

From Benton: James W. Hamilton, Judge.

Department 1. Statement by Mr. Justice Burnett.

This is a suit by Winona L. Woods and husband against J. Leroy Dunn and others to enforce specific performance of an agreement, alleged to have been made between Richard Dunn, deceased, and the plaintiffs, whereby he covenanted to devise to the plaintiff Winona L. Woods 200 acres of land in Benton County, Oregon, in consideration of their promise to care for

him and furnish him a home during the remainder of his life. He was 64 years of age, childless, and had been divorced from his former wife. The plaintiffs say that he was without a fixed home, and was living about from place to place without any settled habitation, although he was possessed of considerable property. His holdings in Benton County were appraised at $52,454.02 after his death. The plaintiffs allege that in the early spring of 1913 they were residing in the vicinity of Corvallis upon a farm owned by them, and that in addition to the occupation of cultivating it the husband was engaged in teaching in the public schools. Further, that about that time Dunn came to their residence and proposed to them that if they would give up their home and remove to King's Valley, take possession of a certain 200 acres of his land, operate the same, and furnish him a home, nurse, cook for, board and take care of him in sickness or in health during the remainder of his life, he would convey, or transfer, the title of this land by such means as his attorney should advise, and do certain other things in the way of helping to improve the property not necessary to be here mentioned. They aver that he was advised by his attorney that the best means of accomplishing the contract on his part would be by a will, and subsequently during the month of May of that year he executed in due form of law his last will and testament, whereby he devised to the plaintiff Winona L. Woods the 200-acre tract of land in consideration of the promise of the plaintiffs already mentioned. They state that in pursuance of the contract thus formed they sold their home near Corvallis, the plaintiff husband abandoned his intended career of teaching, and they removed to the land in question, took possession of the same, improved it and in every

way complied with their agreement, furnished Richard Dunn with a home and cared for him attentively and completely in accordance with their covenant. Dunn died as the result of an accidental shooting on September 4, 1913. The complaint declares that later in the same month another instrument, purporting to be the last will and testament of Richard Dunn, was admitted to probate in the County Court of Benton County, and that it omitted the devise to the plaintiff Winona of the 200 acres of land in question. The defendants J. Leroy Dunn, Lizzie E. Dunn, James Dunn, Madge Dunn, Ida Pruett and Mary Pratt are heirs at law of Richard Dunn and devisees under this last-mentioned will, which bears date July 16, 1913. The plaintiffs allege that they have demanded a conveyance of the 200-acre tract which has been refused. The prayer of the complaint is to the effect that the defendants, as successors in interest of the decedent, convey the land in execution of the alleged agreement.

The contract upon which the complaint is based is denied by the defendants. The complaint is otherwise traversed in part. They rely upon the July will as a final disposition of the decedent's property. The first affirmative defense is:

"That the said alleged agreement set out in said complaint, if any such there were, was and is void because neither the said alleged agreement nor any note or memorandum thereof, expressing the consideration, was in writing and subscribed by the said Richard Dunn, or by his lawfully authorized agent, as required by Section 808, L. O. L."

Next the defendants aver that the alleged contract was rescinded by the mutual agreement of the parties prior to Dunn's death. Of this we remark in passing there is no evidence whatever. Lastly, they declare thus:

"That at the time of said alleged agreement set out in the complaint, the lands described in the complaint were, ever since have been, and now are of the reasonable worth and value of $12,000. That at the time of said alleged agreement the said Richard Dunn was aged and in an enfeebled condition of health, and seriously ill, and at said time the expectancy of life of the said Richard Dunn, because of his enfeebled condition and poor health and sickness was not to exceed one year. That said alleged agreement, if any such there were, was grossly unequal and harsh in its terms, and was grossly improvident on the part of said Richard Dunn, by reason of the disparity between the benefits to accrue to him from the services to be performed thereunder by the plaintiffs and their value and the value of said lands. That at the time of making of said alleged agreement, and for a long time prior thereto, the said Richard Dunn was and had been greatly enfeebled in mind and body by reason of his age and sickness and long-continued excessive indulgence in the use of intoxicating liquors, and to such an extent that he was easily susceptible to the influence of others; and that if said alleged agreement was made by the said Richard Dunn, the same was procured from him by the overreaching influence and persuasion of the plaintiffs, fraudulently exerted upon the mind of said Richard Dunn while in such weakened and enfeebled condition."

The affirmative matter of the answer is traversed by the reply. As matter in estoppel the plaintiffs further set forth more in detail the age and partially helpless condition of the decedent; that, owing to his afflictions and lack of culture, he was not a pleasant companion; that the defendants, who are his relatives, were unwilling to have anything to do with him; that in default of their attentions Dunn turned to the plaintiffs to supply him with the comforts of a home, which they did, and which his relatives neglected. They enlarge to considerable length on the allegations of their

complaint respecting the services they rendered, and say that the defendants stood by without rendering any aid or service to Dunn, saw and without making objection permitted the plaintiffs to perform such offices and to go into possession of and remain on said land; that the plaintiffs have in every way performed their contract with Dunn; and that he received said performance to his great aid and comfort.

After a hearing the Circuit Court found substantially that the agreement was made as stated in the complaint; that Richard Dunn actually executed a will containing a devise to Mrs. Woods of the 200 acres mentioned, and that the plaintiffs performed their agreement for about five months, when Dunn was accidentally killed. The court, however, concluded that the services rendered might be estimated at full value liquidated in money so as to reasonably make the promisees whole, and that, in view of a gift of money previously made by Dunn to the plaintiff Winona, the services as a consideration are inadequate for the realty in dispute, and so dismissed the suit. The plaintiffs appeal.        Reversed.

For appellants there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Messrs. Mc-Fadden & Clarke,* with an oral argument by *Mr. James K. Weatherford.*

For respondents there was a brief over the names of *Mr. John M. Pipes, Messrs. Yates & Woods* and *Messrs. Woodcock, Smith & Bryson,* with oral arguments by *Mr. Pipes* and *Mr. E. R. Bryson.*

Mr. Justice Burnett delivered the opinion of the court.

The evidence shows, as stated, that Richard Dunn had accumulated property amounting to upward of

$52,000, and that he was childless and alone in the
world. He had little to do with his relatives, and the
testimony discloses that they gave him little attention.
He was uncouth in his habits, having lived on the fron-
tier most of his life, and was addicted to the use of
intoxicants. He had resided for a time with his
nephew on lands afterward devised to the latter by
the July will, but the cookery in the family did not
suit him, and he was disturbed by the noise of the
nephew's little son, so that his home there was not to
his liking. He had known Mrs. Woods from her child-
hood, and was quite fond of her. He had often visited
at the home of her parents, where she showed him such
attention as a little girl would render to an old man
who appeared to be attached to her. She and her hus-
band were graduates of the Oregon Agricultural Col-
lege. After their marriage they taught school, and
finally purchased a small tract of land adjoining Cor-
vallis, where, in addition to the operation of their
little farm, the husband had secured a situation in the
Corvallis schools. They intended to make that their
permanent home and pursue the career of teaching
near the seat of learning already mentioned. The tes-
timony shows that at this juncture Dunn visited them,
and proposed to the wife that if she and her husband
would remove to the property in dispute, some 14
miles distant, and take care of him, furnish him a
home, and minister to his necessities in sickness or in
health as long as he lived, he would give her the land
in such manner as his attorney should advise. She
told him, in substance, that she preferred to consult
her husband, that they had settled on their career, and
that she would not give him an answer at the time.
She and Dunn both told her husband about the matter,
and they consulted with him, but the plaintiffs reserved

their decision for a later date. After considering the subject about two weeks, they decided to accept Dunn's offer. During this period he remained at their house a part of the time, drank considerable liquor, and for about a week was drunk practically all the time. His condition is described by Mrs. Woods to the effect that he sat in his chair and slept most of the time, going to his bottle when he woke and drinking more. During the week that this continued she and her husband took care of him and ministered to his wants generally. After he recovered from his debauch, without saying anything to either of the plaintiffs, he went to the bank and drew out $1,000 in coin, taking Mr. Woods with him. For that purpose he had the plaintiff husband draw a check in favor of Dunn which the latter signed, as for some reason or other he was not well able to write more. Calling Woods to accompany him, they went to another bank, where Dunn delivered the coin to the cashier, with instructions to deposit it to the account of Mrs. Woods. The cashier asked how she spelled her given name, and Dunn called upon Woods to supply the information. This was the first that either of the plaintiffs had any intimation of his intention to make the gift of the money. Afterward Dunn had a slight stroke of paralysis, which interfered somewhat with his speech, but at his request, in order to wind up the business, Mrs. Woods sent for his attorney, who came and took his directions about the draft of his will, in pursuance of which that document was drawn up and executed by him the following day. After the instruction about the payment of his debts and the disposition of his body, he gave to a niece $300, and any note or account he might hold against her at his death; to one nephew $50, and to another, with whom he had resided, as stated, a life

estate in about 165 acres of land in Benton County, Oregon, remainder in fee to the son of the nephew. The sixth clause of that will reads thus:

"I give and bequeath to Winona L. Woods two hundred (200) acres to be taken from the north side of my lands situated in township 10 south, range 6 west of Willamette Meridian in Benton County, Oregon. I make this bequest with the distinct understanding that the said Winona L. Woods shall furnish me a home and take care of me either in sickness or in health during my natural life."

He then devised to his four sisters all the rest of his land, finishing the disposition of his property by giving the *residuum* to all the legatees, to be divided between them equally. The July will was much like the former, except that it omitted all reference to the plaintiffs, or either of them.

1. It is settled in this state that it is competent for one to make a binding agreement to devise real property by his last will and testament: *Rose* v. *Oliver,* 32 Or. 447, 456 (52 Pac. 176); *Richardson* v. *Orth,* 40 Or. 252, 263 (66 Pac. 925, 69 Pac. 455); *Kelley* v. *Devin,* 65 Or. 211 (132 Pac. 535). The property of a living person is his own. He has an undoubted right to lawfully contract so as to alienate the title from himself, either by deed or testament. During his lifetime his relatives have no right or interest in the same as such. The law of descents is a conventional process, instituted to take the place of title by mere occupancy, and may be avoided by testamentary disposition. It was permissible, therefore, for Richard Dunn to contract with the plaintiffs as they allege. The question to be determined is whether he did so stipulate.

2. The record is replete with evidence that the agreement was made substantially as averred in the

81 Or.—30

complaint. Concerning his lack of acumen to make the same, even if we should conclude that the answer of the defendants sufficiently pleads that he was suffering from disability, the testimony is ample that he thoroughly understood what he was about, and was competent in every way to make such a contract. It is true that his ailment made talking somewhat difficult, but he was able to make himself understood to his attorney, and, after the will had been drawn it was read to him to his thorough understanding and he executed it in all respects as provided by our laws. Moreover, the matter had been thoroughly canvassed by the plaintiffs and the decedent prior to the attack of paralysis, and was fully understood by all of them.

3, 4. It is contended by the defendants that there is no writing satisfying the statute of frauds embodied in Section 808, L. O. L. The defendants rest their contention in that respect on the part of that section here set down:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * 6. An agreement for the leasing, for a longer period than one year, or for the sale of real property, or of any interest therein."

Laying aside for the moment the idea that this was not an agreement for leasing or selling real property, but a contract to devise the same, we proceed to consider whether the clause of the will already quoted would be a sufficient memorandum within the statute. From the quoted devise we discern what is to be done by the owner of the realty. He is to give and be-

queath to Winona L. Woods a certain described 200
acres of land. What induced him to do so is also
specified. It is that she shall furnish him a home and
take care of him, either in sickness or in health, dur-
ing his natural life. The thing which induced him to
make the devise is the consideration. It is expressed
in the memorandum, even considering this is a sale
instead of what it is, a devise. The terms of the stat-
ute respecting some note or memorandum thereof ex-
pressing the consideration are fully met in the writ-
ing, and it was subscribed by the party to be charged.
That is to say, the duty of devising the realty was
charged upon Richard Dunn, and we find over his own
signature in the record the will containing the quoted
clause. In all statutory respects it is a note or memo-
randum of the covenant between the parties, express-
ing the consideration in writing, and subscribed by the
party to be charged. In treating of indispensable evi-
dence, Section 804, L. O. L., reads thus:

"No estate or interest in real property, other than
a lease for a term not exceeding one year, nor any
trust or power concerning such property, can be
created, transferred, or declared otherwise than by
operation of law, or by a conveyance or other instru-
ment in writing, subscribed by the party creating,
transferring, or declaring the same, or by his lawful
agent, under written authority, and executed with such
formalities as are required by law."

This, however, is qualified by Section 805, as fol-
lows:

"The last section shall not be construed to affect
the power of a testator in the disposition of his real
property by a last will and testament, nor to prevent
a trust from arising or being extinguished by implica-
tion or operation of law, nor to affect the power of a
court to compel the specific performance of an agree-
ment in relation to such property."

It is true that Section 7319 says:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator."

Reading all these sections together, it is manifest that an agreement to devise real property is not within the purview of Section 808 as the defendants contend. The subject matter of this contract is governed by Sections 805 and 7319, both of which are satisfied by the writing introduced in evidence, to wit, the will of May, 1913.

5. Beyond all this, the evidence is full and complete, without substantial dispute that the plaintiffs fully performed all the conditions of their pact with the decedent. They gave up the career which in their early married life they had mapped out for themselves. They went upon the land at Dunn's request. Largely at their own expense they made valuable and substantial improvements thereupon. They devoted themselves almost exclusively to his comfort. They supplied the place which ought to have been, but was not, offered by his own relatives. It was natural that in default of proper attention from those of his own blood, he should turn to the little girl of whom he was so fond in her childhood, but now grown to adult estate and settled in a home of her own. The kindness to him which she had learned in infancy she continued in the present juncture, and there is no showing that she in the least abated the devotion that would have been due from a most dutiful daughter.

6. It is contended that because of the fact that Dunn accidentally met his death in about four months after the agreement was made it would be unreasonable and

unjust to require the covenant to be specifically performed. As to the justice of the matter, bearing in mind that it is not a question between the original parties, all of whom were free, voluntary agents empowered to act as they desired, we remark that he could not rely upon his relatives to give him suitable attention. He was dissatisfied with them, and naturally turned to other sources for the desired care. It is just that the benefit of his bounty should inure to those who did him the most good, and all that was done for him at all. Moreover, it is but a part of his wealth that goes in that direction. As stated, his property amounted to upward of $52,000. Whatever claims his relatives might have upon him are amply compensated by the residuary clause of his will. It ill lies in their mouths to say that he was incompetent to enter into the agreement which they attack, or to make a will in performance of his covenant, for they claim under a devise made only about two months later. Besides this, at his age of 64, according to the American Mortality Tables he had an expectancy of more than 11 years. It is true that his physician said to him after the paralytic attack already mentioned that he might live a year or he might live 10 years, but that is mere opinion, and shows nothing to alter the case materially. The task imposed upon them by the agreement contemplated a probable continuance of 11 years, and possibly longer, taking care of an old man uncouth in person and habit and requiring special attention, special food and ever-increasing care. The character of the service was such that it could not be fairly calculated in advance according to a mere monetary standard. The property was his, and he had a right to compensate the plaintiffs for their ministrations in any manner he chose, provided he did it understand-

ingly and without any fraud or imposition upon him. The testimony shows that he had the advice of his own attorney, that he thoroughly understood the nature of the business in which he was engaged, and that he acted without any coercion or influence of anyone, and wholly on his own initiative. The transaction was as fair as it possibly could be made, and it was entered into upon mature deliberation. At that time none of his relatives had any right to or interest in any of his property. They did not do or pay anything giving them any claim upon it afterward. If nothing else appeared, they would only be beneficiaries of a conventional system for the orderly devolution of property in default of other disposition of it by the last holder. At best, they are recipients of his generosity under his will, but they take it subject to his contract affecting the property.

That the undertaking was accomplished in less than the contemplated time cannot alter the question. Neither can it affect the matter that before the agreement was made he gave $1,000 to the plaintiff wife. That was unsolicited by anyone, and was a pure gratuity which he had the right to bestow. In that view the case must depend entirely upon whether plaintiffs performed their part of the contract. We hear of instances where a real estate broker earns a large fee in a day or two after he has taken the contract of finding a purchaser of the premises. Its payment is enforced. We continually pay premiums for the insurance of our houses, yet the buildings never burn. Shall we recover the money because no conflagration ensues? On the other hand, a fire often occurs the day after the premium was paid for insurance covering an extended period of years. Are we entitled to a rebate of the premium on that account? The uncertainty of

the time during which the plaintiffs would continue performance of the contract was naturally within the contemplation of the parties, and they must be presumed to have contracted with reference thereto.

In brief, the statutes governing such a transaction have been fully complied with. Even if the statute of frauds, upon which the defendants rely, affected the case, the record is replete with testimony of part performance, taking the matter out of the statute. The contract is established. Its performance on the part of the plaintiffs is thoroughly proven. Without their knowledge the decedent broke his covenant by making a new will, ignoring the plaintiffs, yet gave them no notice of rescission, but continued to avail himself of their hospitality, and eventually died in their home. The court cannot make a new contract. The stipulation was made. It must be observed. The following precedents are applicable to the instant case: *Berg* v. *Moreau,* 199 Mo. 416 (97 S. W. 901, 9 L. R. A. (N. S.) 157); *Bryson* v. *McShane,* 48 W. Va. 126 (35 S. E. 848, 49 L. R. A. 527); *Lothrop* v. *Marble,* 12 S. D. 511 (81 N. W. 885, 76 Am. St. Rep. 626).

Upon the fact found, the decree of the Circuit Court was an erroneous conclusion. It is reversed, and one here rendered according to the prayer of the complaint.                  Reversed.    Decree Rendered.

Mr. Chief Justice Moore, Mr. Justice Benson and Mr. Justice Harris concur.