MARY M. FINN v. PAUL BARNES, Executor of the Estate of JAMES M. BUCHER, and PAUL BARNES, CLARA BARNES, BERT LEEDUM, BEATRICE STAMM, Appellants, MOBERLY SAVINGS & LOAN ASSOCIATION, MECHANICS BANK & TRUST COMPANY, MOBERLY TRUST COMPANY and BANK OF MOBERLY, Defendants.—101 S. W. (2d) 718.

Division One, February 5, 1937.

W. W. *Barnes* and *Lawrence Holman* for appellants.

446

*Redick O'Bryan* and *Arthur B. Chamier* for respondent.

BRADLEY, C.—This cause is for the specific performance of an alleged contract for reciprocal wills between plaintiff and James Bucher, deceased. Under the pleadings, title to real property is involved and by the decree rendered, such title was determined. Appellant, Paul Barnes, is executor under the probated will of James M. Bucher, deceased, and the executor and his wife, Clara Barnes, are the residuary devisees and legatees under said will. Appellants Bert Leedum and Beatrice Stamm are legatees under the probated will. Defendants, Moberly Savings & Loan Association, Mechanics Bank & Trust Company, Moberly Trust Company and Bank of Moberly are institutions in Moberly, Missouri, and Bucher, at the time of his death, owned stock in the first three, and a savings account in the Bank of Moberly.

The trial court found for plaintiff and the beneficiaries under the probated will appealed. We shall refer to respondent as plaintiff and to those appealing as defendants.

Plaintiff alleged that Bucher died testate on or about September 19, 1931; that defendant Paul Barnes was appointed executor; that the will was probated, and further alleged the respective interest of all those named in the petition as defendants. Also, it is alleged that on or about October 5, 1916, plaintiff and Bucher entered into an agreement by the terms of which she was to convey to him by deed a certain house and lot in Moberly, and to take care of his room, his mending, washing, ironing and sewing; that she was to execute her will devising and bequeathing to Bucher all of her property, real and personal, and that in consideration thereof and the services rendered, he agreed to execute his will devising and bequeathing to her all his property, real and personal; that pursuant to said agreement and on October 5, 1916, plaintiff executed her will in compliance with the agreement and at the same time, executed and delivered the deed, and thereafter, she took care of Bucher, did his washing, ironing, mending and sewing, and did all things she agreed to do; that she continued so to do until a short time prior to his death, and stood ready and willing so to do at all times; that at said time (October 5, 1916) she and Bucher each owned property and continued to own property up to the time of his death; that she "was induced to enter into said contract and to do and perform the things aforesaid by reason of the promise and agreement on the part of said deceased to devise and bequeath to her at his death all of his property,

real, personal and mixed, and his execution of his last will and testament on the said 5th day of October, 1916, devising and bequeathing to her all of his property, real, personal and mixed.;'' that the will executed by Bucher on October 5, 1916, was pursuant to the said agreement; that she performed all the terms and conditions of the agreement, but that Bucher wrongfully and fraudulently and without notice to plaintiff, executed (not long before his death) another will disposing of his property, contrary to the agreement and his will executed October 5, 1916. Plaintiff further alleged that for twenty years prior to October 5, 1916, she had taken care of the household of Bucher, and had done his washing, ironing, sewing, etc.; that Bucher suggested ''that the proper method to carry into effect such agreement was for each to execute a will making the other sole devisee and legatee of all the property of which he or she should die seized, and for plaintiff to deed to him her house and lot on Clark Street in Moberly, Missouri; that he further suggested that they should consult one Oak Hunter, a lawyer in Moberly, Missouri, for advice as to carrying said agreement into effect, and to draw the necessary instruments for such purpose, which was by said parties done; that on October 5, 1916, said Oak Hunter was consulted and instructed to draw such wills and deed and which were on said date drawn by him, and one of said wills executed by plaintiff and one by deceased, and said deed was executed and acknowledged by plaintiff and delivered to deceased; that deceased entered into said agreement and made and executed said will in consideration of the execution on said day of the other will by plaintiff, and in consideration of such services theretofore performed and rendered by her for more than twenty years prior to said date, and in consideration of her continuing to perform and render such services, and in consideration of the deeding to deceased by plaintiff of the house and lot in Moberly, Missouri, above mentioned.''

The prayer of the petition is for specific performance and that the court ''declare that the estate of said James M. Bucher, deceased, is impressed with a trust in favor of plaintiff, by reason of the premises, and that this court, by its judgment and decree declare that plaintiff is entitled to all of the property belonging to the said James M. Bucher at the time of his death, real, personal and mixed, subject only to the debts of said deceased, and the cost of administration.'' Also, the prayer asked that title be quieted, etc.

Only the answer of Paul Barnes as executor and individually and Clara Barnes appears in the record. This answer admitted the death of Bucher as alleged and his execution of the probated will, and the appointment of Paul Barnes as executor; denied the alleged agreement, denied that plaintiff rendered the services alleged; denied that the will alleged to have been executed by Bucher October 5, 1916, was

in force and effect, and denied that plaintiff stood ready and willing to carry out the alleged agreement. Also, a paragraph in the answer denied all allegations, except those specifically admitted. The reply was a general denial of new matter.

Plaintiff's witness, Oak Hunter, a lawyer, testified to the effect that plaintiff and Bucher came to him on October 5, 1916, and that they related to him the agreement (detailing about as alleged) and that he on that day drew the two wills and the deed, to the house and lot, from plaintiff to Bucher; that each will devised all his or her property to the other; that "the wills were identical with the exception of the change of names." That he delivered these instruments to Bucher and at Bucher's request, he had the deed recorded. Mr. Hunter had known both plaintiff and Bucher for many years, and testified that plaintiff, both prior and subsequent to October 5, 1916, rendered services to Bucher and described these about as alleged in the petition; and that plaintiff had rendered such services for "twenty years at least" prior to October 5, 1916. The deed from plaintiff to Bucher executed October 5, 1916, was found in Bucher's safe deposit box after his death and was introduced in evidence; also, a copy of plaintiff's will executed October 5, 1916, was introduced. Plaintiff intorduced several witnesses to whom Bucher said that he had made such agreement as plaintiff alleged. The composite evidence of these witnesses may be stated as related by Sam Sparkman, Chief of Police of Moberly. Sparkman, in 1917, was serving "as merchants night police," and at that time, Bucher was also serving as a "merchants night policeman." Both Sparkman and Bucher were paid by the merchants, but were commissioned by the city, and split 50-50 whatever the merchants paid. Sparkman testified that Bucher told him that he, Bucher, and plaintiff "had an agreement among themselves, if he go first, the property be turned over to Linn (plaintiff), and if Linn died first, why he would fall heir to the property." Also, several witnesses, in addition to Hunter, testified as to the services rendered by plaintiff.

Defendants' witness, Marriott, testified that Bucher paid certain coal bills of plaintiff. Missa Johnson, Lovey Nichols and Mattie Jordon, colored women, testified as witnesses for defendants. Missa said she (time not given) "cleaned up there (for Bucher) three or four times and washed for him;" that later (after 1910) "I cleaned up his room; I have swept, cleaned and dusted; take clothes and wash them, then take them back to him; he moved from the saloon to the coal office;" that when he lived over the jewelry store she did "that work" for three or four months. Lovey testified that about 1929 or 1930, she did Bucher's washing, and patched and mended and cleaned his room; "I did his washing about two years, I guess." Mattie said that she washed for Bucher about a year before he went

to the hospital (Bucher went to the hospital shortly prior to his death September 19, 1931).

Defendants' evidence also tended to show that plaintiff had made the statement that she had executed another will prior to Bucher's death, but she denied making such statement and no new will made prior to Bucher's death was shown, except the will of October 5, 1916.

In an equity case we are not bound by the finding on the facts of the trial chancellor, but we do and should give due deference to such finding. [Vining v. Ramage, 319 Mo. 65, 3 S. W. (2d) 712; Selle v. Selle, 337 Mo. 1234, 88 S. W. (2d) 877.] The Selle case, supra, was similar in principle to the present case, and we answered there, we think, every question that is here. There we said (337 Mo. 1234, 88 S. W. (2d) 1. c. 881): "The general rule and our own rule is, under such contracts, that, although the contract is oral, if the contract has been fully performed by the party agreeing to render the services so that a denial of specific performance would work a fraud on the party who has fully performed, then the Statute of Frauds cannot successfully be invoked as a bar to recovery."

It would be a manifest fraud on plaintiff, if the agreement was made and she fully performed, both of which the trial chancellor found, and which finding we approve, to permit the Statute of Frauds to operate as a bar. It is trite that the purpose of the Statute of Frauds is to prevent wrongs and not to protect them. In the Selle case, 337 Mo. 1234, 1. c. 1239, 88 S. W. (2d) 1. c. 880, we reviewed a number of cases involving alleged contracts similar in principle to the one here, and found that "each case has had to rest on its own facts." In the Selle case we denied recovery, because recovery, under the facts there (12 days service) would have been unconscionable, and also because the services there rendered could be easily compensated in money.

We think the general rule is stated correctly in 68 Corpus Juris, 565, as follows: "Except so far as the nature of the property itself or the promisor's interest in, or authority over, it is affected by special restrictions or limitations preventive of the existence of such power, a person may make a valid contract to leave his property at his death by will or otherwise in a particular way, and such contract will be enforceable, whether it provides for the payment of money, or the leaving of specific property, or of all or a moiety of that which the promisor shall leave at his death, if the parties possess the capacity to contract, and if the contract is fair and equitable, and possesses the usual essentials requisite for contracts generally, such as a valid consideration, acceptance of its terms showing a mutual agreement thereto, certainty and definiteness in its terms and in the designation of the promisee or beneficiary, and provided the contract is not within the Statute of Frauds, and is free from fraud, or

undue influence in procuring it. Contracts of that character are not repugnant to public policy, nor are they illegal."

It appears that the trial court took the present cause under advisement on April 13, 1933, and did not render a decision until August 28th thereafter. It is suggested that this delay was indicative of the court's serious doubts on the merits. In support of this suggestion, Chambers v. Chambers, 227 Mo. 262, 1. c. 287, 127 S. W. 86, is cited. What was said in the Chambers case on this subject was *arguendo* and is not persuasive here.

The judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.