**Ralph JEFFRESS, Plaintiff-Respondent,**

**v.**

**Dora PIATT, Matthew Piatt, Lucille Piatt, Lowell Mooney, Carol Ann Mooney, a Minor, Mary Jane Mooney, a Minor, and William Mooney, Defendants-Appellants.**

**No. 49801.**

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1963.

Briney & Welborn, Joe Welborn, James E. Spain, Bloomfield, for appellants.

Claude Arnold, Dexter, for respondent.

BARRETT, Commissioner.

This action originated when Ralph Jeffress instituted a partition suit in which he alleged that he and the defendants as tenants in common each owned an undivided one-half interest in a 57-acre farm in Stoddard County and seven lots in Bernie. Admittedly, their title to the property came about in this manner: The title to all this property was in S. A. (Sadie) Piatt and on December 27, 1932, she conveyed it to Lottie Jeffress and William Piatt as tenants in common. William Piatt died December 16, 1942 and Lottie died July 19, 1960. The plaintiff, Ralph Jeffress, is Lottie's son and surviving heir, and the defendants are the surviving heirs of William Piatt. In response to the action in partition the defendants first filed an answer and counterclaim in which, from December 1942 to July 1960, they admitted their tenancy in common with Lottie Jeffress. They asserted, however, that after William Piatt's death in 1942 Lottie went into possession of the property and throughout the years collected all the rents and profits from the property but made no accounting to the defendants, her cotenants, and therefore they prayed an accounting and the establishment of a lien on the real estate for their proportionate share of the rents and profits. Subsequently in an amended answer and counterclaim the defendants asserted that after the death of William Piatt, then tenant in common with Lottie Jeffress, Lottie "entered into an agreement *with the defendants* by the terms of which said agreement it was agreed that the said Lottie Jeffress should have the enjoyment, use, possession and rents from all of said property except a house located on one of the lots in the City of Bernie, and that in consideration for the use, rents and profits thereon, the said Lottie Jeffress did agree that at her death, all interest in said property would be left to the defendants herein, as their sole property." Except for one house and lot in Bernie, it was alleged that Lottie, until her death in 1960, retained all the rents but failed to execute a will or deed pursuant to the agreement and therefore the defendants now claim to be the owners in fee simple of at least the 57-acre farm. The plaintiff, Ralph Jeffress, by reply denied that there was any such oral agreement. He alleged laches and asserted that "any relief sought * * * by reason of said alleged agreement did not accrue within ten years" and was therefore barred by the statute of limitations. Furthermore, he asserted that any claim for rents was barred by the five-year statute of limitations.

Upon the trial of the cause the court found that the plaintiff and the defendants were tenants in common of the "real estate herein described" and accordingly decreed

partition by sale and division of proceeds. But "(t)he court further takes up the matter in controversy upon Defendant's Counterclaim and upon the pleadings and evidence adduced * * * doth find that the Defendants are not entitled to recover upon their Counterclaim." The defendants have appealed and contend, first, that the court erred in failing to find and decree that by reason of the oral agreement they were the fee simple owners of the real estate and failing in that they assert, second, that the court erred in failing to find that they were entitled to one-half the rents since 1942 and therefore, of course, erred in not requiring an accounting and accordingly a lien on the property for their share in the rents.

As to the alleged "oral contract to devise realty," as it is called in the appellant's brief, this substantially is all the evidence: A real estate agent in Bernie testified, "around two years ago, two or three, I wouldn't say the exact date," that Lottie was at his home one evening and he inquired whether she would be interested in selling the farm. But she said she couldn't, "She said all she had was a lifetime dower on the place and she couldn't sell it." Matthew Piatt, son of William Piatt, nephew of Lottie, one of the defendants said that after Lottie's funeral "Ralph (the plaintiff) made the remark he would like to have the farm, wanted to know if he could make a deal for the farm." But testifies Matthew, "I said, 'You know the farm was to go to our side of the family at Aunt Lottie s death, she's had the rents all these years.' He said, 'I know, I know, but give me till the first of the year to think about it.'" Winnie Piatt, wife of Matthew, said that two or three years ago, "Must have been in the spring," she had a conversation with Lottie about crops and income "and her mother's little rent houses, and she said, 'Through the generosity of the Piatts I've had as much as I've had to live on through the years.' She said that when her mother died there was just she and Mr. Piatt, and at his death, the Piatt family upon an

agreement with her, that she could have all the income from the farm as long as she lived—. * * * And at her death it was to go to the Piatt family, because she had received it all through their generosity." She said, "The agreement was made after Mr. Piatt's death, by Mrs. Jeffress and the family. * * * She told me that sitting in my room, that they had given her the rent all those years and at her death the farm was to go to them." Grover Crow who had farmed the land as a tenant for over 30 years said that after Sadie's death he went down to see about renting the farm "And during that time they (Lottie and Will) said just go ahead and pay Will the rent, and later on I talked to them and they both told me that they had an agreement they wasn't going to sell that, that they was dividing 50–50 with the rent, and at their death, either one of them, the one that died first, the other would receive the rents off of the farm until their death, then it would go to the heirs." This conversation, he said, "That must have been in '39, I believe it was, and he said which one died first the other would collect the rent on it until their death, then it would go to their heirs. * * * Lottie's heirs and his heirs, Will's heirs."

This oral understanding or agreement, particularly as testified to by the tenant Crow, is obviously not the oral contract asserted in the defendants' pleadings. This, referring again to the pleadings, is the contract asserted by the defendants, "Shortly after the death of the said William M. Piatt, the said Lottie Jeffress, then tenant in common with the defendants in ownership of said lands *entered into an agreement with the defendants* * * *." As the court said in the leading case of Walker v. Bohannan, 243 Mo. 119, 147 S. W. 1024, "With the foregoing as the contract, let us, as with a yardstick, measure the evidence. * * * This does not sustain the contract pleaded." It is not claimed here, as is often the case, that there was an agreement to devise as compensation for services (Annotations 69 A.

L.R. 14, 106 A.L.R. 742), and, of course, the case is not comparable to an action for specific performance of a contract for reciprocal wills as in Finn v. Barnes, 340 Mo. 445, 101 S.W.2d 718. Admittedly, parties may make a valid oral contract to will their property and the contract may be established by circumstantial evidence but the circumstances must indeed be clear, cogent and convincing. Bealmear v. Beeson, (Mo.App.), 303 S.W.2d 690, 694. The real estate agent did not purport to testify to a contract or even to an oral understanding. Matthew did not testify, as pleaded, to a contract between Lottie and the defendants, he only said that Ralph apparently acquiesced in his statement that "the farm was to go to our side of the family." The contract as testified to by Matthew's wife was most indefinite and vague, and as to all the proof, it "rests wholly in parol. The time of making the contract does not appear. Its terms are not established, but appear solely from alleged declarations of deceased persons about the contract. These declarations are not entirely consistent. They suggest different terms." Shaw v. Hamilton, 346 Mo. 366, 380, 141 S.W.2d 817, 822, 823. And finally, as the court also said in Shaw v. Hamilton, the nature and terms of the alleged contract "were not established with definiteness by satisfactory and convincing evidence."

In answer to interrogatories the plaintiff stated that after William Piatt's death his mother collected "gross farm income" of $19,351.89, that there was fertilizer expense of $937.44 and $1,379.04 taxes. As to house expense there were repairs of $427.25 and taxes $291.19. The court made only a general finding that "Defendants are not entitled to recover upon their Counterclaim." In support of this finding the respondent Jeffress makes these claims (a) that since Lottie "did not oust or exclude her cotenants and since there was no proof of an agreement on her part to pay them rents for her occupancy of the premises; this plaintiff cannot be held liable to the appellants therefor," (b) that since plaintiff made no claim for taxes, improvements or other payments by Lottie the defendants are not entitled to an accounting or to an equitable lien, and (c) that if an accounting is appropriate the five-year statute of limitations applies to the claim. In support of these three specific points the respondent relies on these cases, Goforth v. Ellis, (Mo.), 300 S.W.2d 379; Beckham v. Eggleston, (Mo.App.), 341 S.W.2d 337, and Byrne v. Byrne, 289 Mo. 109, 233 S.W. 461. These cases illustrate the general rules asserted by the respondent but they are not applicable to this case. It is not necessary to examine these cases and point out the distinctions. In addition to these cases there are also Hahn v. Hahn, (Mo.), 297 S.W.2d 559, and Richardson v. Kuhlmyer, (Mo.), 250 S.W.2d 355. It is sufficient for the purposes of this appeal to say that those cases and the principles they announce are obviously not applicable to the claim for an accounting for rents made here.

■ Over the years Mrs. Jeffress collected rent, perhaps from Grover Crow, or rented the farm, if not some of the lots, to third persons, the farm rent totalling $19,351.89. In this situation in this action in partition the applicable principle is this: "It is ordinarily true that one tenant in common can not recover from another, rent or compensation for the use by him of the common property. The property in contemplation of law is free to all, and each may enter and enjoy his rights, but where neither occupies the property for his own use *and one rents it or any part of it to third persons and collects the rents,* or where one, as in this case, denies the right of the other to a part thereof, and thereby pro tanto ousts the other, *the rule is otherwise, and an accounting may be had in a suit for partition* if there is anything due at the time that suit is begun and such relief is asked at that time, or a suit in equity for an accounting will lie after the termination of the partition suit." Bates v. Hamilton, 144 Mo. 1, 13, 45 S.W. 641, 643. This rule and its rationale is more

fully explored in Beck v. Kallmeyer, 42 Mo.App. 563; 86 C.J.S., Tenancy in Common § 47, p. 412, and the Annotations 27 A. L.R. 184, 51 A.L.R.2d 388, 48 A.L.R.2d 1305.

█ There is of course a glaring inconsistency in the defendants' original claim that Mrs. Jeffress was to have the rents for life and their present or alternative claim for an accounting. But the circumstances were not fully developed, no doubt the defendants had full knowledge of Lottie's rent transactions but as the record now stands it may not be said that "The case discloses every element of an estoppel by laches." Ryan v. Gorman, (Mo.) 183 S.W. 594, 597. Also with the record in this posture it is not necessary to say whether the statute of limitations is applicable and a bar to any part of the claim for rents. But in general see: Henry v. Steward, 363 Mo. 213, 219, 250 S.W.2d 527, 530; 53 C.J.S. Limitations of Actions § 7, p. 927; 54 C.J.S., Limitations of Actions § 124, p. 34.

█ In short, the defendants' claim to an accounting of rents may not be denied for the reasons now asserted by the plaintiff. The plaintiff did not press the claim for taxes or other expenses, he offered some evidence, the testimony of a banker, indicating that in some manner his mother had accounted for certain rentals but the permissive inferences are vague. Upon the record as it now stands this court may not with confidence dispose of this phase of the litigation or render an accurate accounting and, therefore, the judgment is reversed and the cause remanded for such further proceedings as the parties deem necessary and appropriate.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges Concur.